Good morning. May it please the Court, I'm Robert Jove, and I'm appearing today on behalf of the petitioner Iqbal Singh Gill. Now, this case, in our view, hinges on what Mr. Gill said in an asylum interview in October of 2002, some three or four years before his merits hearing. Because the asylum officer had no independent recollection of that interview, and nor did Mr. Singh, the immigration judge relied entirely on the notes from that interview that were prepared by the AO, and these are set forth in the record beginning on page 422. Could you speak into the microphone? It's a little hard to hear. Yes, I'm sure you're accurate. Thank you. And based on those notes, the immigration judge came to the conclusion that during his testimony before the AO, he had contradicted his testimony in court that he had participated in political activities before 1993 when he moved to Ghana. But a review of the notes simply doesn't bear that out. If I could walk through the notes with you. I mean, this begins on page 424 of the record, and the critical question here, the thing that the immigration judge relied on, is the first question here on the top of that page where the asylum officer said, what year did you start support ADM, which I'm considering to be a Cali Delmont? And he says, well, in Ghana, 1993. It's not clear exactly whether he's trying to limit his response there to Ghana or, you know, his lifetime. But what's important is that the AO then tried to follow up. This is a little bit further down the page, and she recounts this, the AO recounts this in her testimony on page 369 of the record. But the pivotal question is here, why did you not support while in India? And I'm not sure if you can see that here in about one-third page, one-third of the way down the page. But his response, and the AO read this into the record during the hearing, was, not much involved. That was his response, in India, not much involved. He didn't say he was not involved. He said he wasn't much involved. That deserved a follow-up question, because the clear inference from that is that, in fact, he was involved in India, but no one ever followed up on that. Well, in his original application, which was filed in 2002, was there any reference to supporting the party or being politically active prior to 1993? No, there's no reference in that application, Your Honor. On that point, I would like to make a couple points. First, that was obviously prepared by a non-lawyer. The only thing we know about the preparer is that his name is Amrik, a friend of his. But the other thing is that throughout this entire case, this guy has never claimed that any of the activities in which he was engaged before 1993 caused him any problems with the Indian government. If you look at his application and his explanations in the testimony, every time he was asked why he had problems, he said, they learned about my activities in Ghana. And I can point out the various sections of the record for that. But the point is that the political activities that he described having engaged in before 1993, they're not what led him to be arrested and tortured in India. So it's hardly surprising that the application that he prepared without the assistance of counsel would focus on those activities. Well, the application is a statement of facts that are within his sole memory and knowledge. So the absence of counsel, while interesting, I'm not sure really helps you in this context. I'm not sure, Your Honor, why anyone would think to mention those activities that occurred many years before if they're not related to the problems that he actually had with the police. I mean, if you look at the applications that he filed here. Well, his own testimony was, as I understand it, he testified on direct that he began to support the Akali Dalman in 1985, and on cross-examination he said it was actually before 1984. And then he was asked whether he had instead said that he began his support in 1993. And he said, well, yeah, I might have said that. So. Let's take the 1993 thing first, because that's what the judge relied on. The judge isn't relying on a discrepancy between 84 and 85. He's suggesting in his decision that this guy lied about being active in India before 1993. But again, when you look at the record in his testimony, every time he's asked, like, for example, on 302, they ask, well, why did they arrest you? When they arrested me, they asked me whether I had come from Ghana, and they said I incite people and I incite people, you know. Every single time that he was asked why he was arrested, he said the same thing. It all relates to my activities in Ghana. So. Well, what your burden is a difficult one, because it isn't enough for you to demonstrate  You have to convince us that we are compelled to find differently than the agency did. The law on this is somewhat unclear to me, Your Honor. But as a threshold matter, the judge has to offer a specific and cogent reason that has a nexus to this adverse credibility finding. And what I'm saying here is he's failed to do that. Let me just finish up with what happened. Failed in the sense that we can't review it because it's too unclear? No. Or you're simply saying it's wrong, which is the same thing I'm saying. You have to convince us that it's wrong and that we're compelled to find that it's wrong. I'm saying it's completely unsupported by substantial evidence because he hasn't given any specific and cogent reasons that's linked to his ultimate conclusion. The first thing no one ever asked about this statement here at the asylum interview that he was not much involved in India before 1993. That's a critical point. The only other thing the guy relied on, the immigration judge relied on, in the notes, Your Honor, again, which cannot constitute a specific and cogent reason. This is on page 426 of the record. This is the only other thing from the notes that the judge relied on. He said, the question is, before your two friends were killed, did you do any something to help Akali Dalman? It's not clear exactly what the question is. But the answer is, at that time, which again begs the question, what time period exactly are we talking about? There was no connection back home. Back home. He's again talking about in Ghana, and he didn't have any connection back home in India. This answer here is clearly not talking about whether he was participating in political activities in India pre-1993. He's talking about before his friends were arrested in 1994, was he active in Ghana in that short period of time, the six months that he was there. But these are the two points that the judge relied on with regard to the asylum officer's notes. Neither one of these says anything at all about whether he was active in any way before 1993. If anything, that statement that he was not much involved clearly implies that he did have some involvement. So the judge's reliance on these notes, I think, is unfounded. It's certainly not substantial evidence that this person is not telling the truth. Now, going back to your question, I agree that he left this out of the application. But again, this Court's, this is a pre-Real ID Act case. This Court's precedent says that there are often omissions in applications, particularly when they're prepared by pro se applicants. It's not surprising. And as a general rule, omissions in that circumstance are not going to be substantial evidence to support an average credibility finding. And that's got to be particularly true when the stuff that's left out has no connection at all. Well, go back to the notes for a moment. This is a situation where the asylum officer actually testified and was subject to cross-examination. Right. So I agree with you that if we were to focus on the handwritten notes alone, they're somewhat cryptic. But the context of the handwritten notes is supplemented by the asylum officer's sworn testimony subject to cross-examination at the hearing, and the assessment to refer summary, which clearly indicates that the involvement began after 1993. She testified. So in light of that, going back to Judge Graber's question, why does the record compel a contrary conclusion? Because the asylum officer's testimony, Your Honor, she conceded at the outset that she has no independent recollection of anything that happened at this interview. All she's there trying to do is reconstruct, based on these notes, what was said at the interview. And even my point is, even accepting her interpretation as correct, that these things were said, she ignored the fact. Like, let me go back to page 369 of the record. This is her testimony. And no one jumped on this, but on page 369 of the testimony, she's reading her notes here. She's adding words to it, but she herself on page 369 says that when asked why he did not support the party while in India, he said he was not much involved. And that's on page 369. And then she – there are certain words here that she can't even make out. But the simple fact of the matter is, her own testimony implies that he was involved when he's – when she's reading her notes. And the only other thing that Judge – Well, that's actually not what she says. She says that when she talked to him, he said, I'm not much involved. Not I was not much involved. But that's present tense. Correct, Your Honor. But again, look at the notes. I took interest when abroad. Correct. But look at the notes and compare them to her testimony. Because her – the notes don't say, I'm not. She added that in her testimony after she already conceded that she didn't have any recollection, independent recollection, of the interview. She's confabulating. She's not lying, but she's trying to reconstruct something based on notes from four years before, and she's adding things. That is not acceptable when she herself concedes that she has no independent recollection of what took place. Counsel, you've exceeded your time, but we asked a bunch of questions. You may have a minute for rebuttal when the time comes. Thank you. I appreciate that. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. As Your Honors have noted, the primary issue in this case is whether the evidence in this record compels the conclusion that Petitioner in this case testified credibly. And secondarily, he's raised the issue of whether there was a due process violation in his proceedings below. Now, counsel makes much of the asylum officer's notes and accompanying testimony, but the fact here remains, as was pointed out by Your Honors, that Gill's 2002 asylum application is vastly different from his 2006 supplemental declaration and his testimony thereafter. This Court has determined that it is bound to accept an immigration judge's adverse credibility finding as long as just one of the reasons is supported by substantial evidence and goes to the heart of the claim. And here the judge listed specific grounds, namely when and to what extent Mr. Gill was politically active, which is the very crux of his claim. Now, if you look at his 2002 asylum application, he states that he started working for Simranjit Singh Mann, who we know is the leader of the party, in Ghana. That is in his 2002 asylum application located at 1848 in the record. And we know he makes no mention of any political involvement whatsoever before he went to Ghana in 1993. Weeks later, he testifies or speaks to the asylum officer just weeks later after he submits his asylum application, and he submits under oath to the asylum officer that he did not start supporting the party until 1993 in Ghana. It wasn't until he was placed in removal proceedings in 2006 that he submits this supplemental declaration, which indicates that his involvement stretches all the way back to 1984. And as Your Honors pointed out, then in his testimony he said that he may have even been involved earlier than 1984. In fact, Mr. Gill has progressively bolstered his claim throughout his proceedings. Can you address counsel's due process concerns with regard to the testimony that was taken by the IG in this case? That is, you have an asylum officer who has no independent recollection of the interview, so she has to rely on her notes, which admittedly is somewhat cryptic in testifying about essentially a date of involvement. You're talking about somebody who's testifying through the assistance of his interpreter present, correct? That's correct. And, well, Your Honor, he's plainly, we feel he's plainly not shown a due process violation because he has to show that the proceedings were fundamentally unfair, that they were so unfair that he was prevented from reasonably presenting his case. Now, this court has discussed the whole issue of an assessment to refer in the Jarnail-Singh case, and we feel that this case is the polar opposite of the Jarnail-Singh case. Here we have an officer's contemporaneous notes, which indicate question and skeptic in some instances. But unlike the Jarnail-Singh case, we have the asylum officer testifying under oath, a veteran officer testifying under oath. Petitioner's counsel was provided the notes and assessments to refer in advance of the hearing so they could prepare. They were given the opportunity to cross-examine her. She did not indicate any question about what the notes said, where they were pertinent. When he was asked when he started to support the party, he said, in Ghana in 1993. That's what her notes indicate, and she had no issue of clarity in terms of deciphering those notes. In fact, a reader can see plainly that's what the notes say. He had an interpreter of his own choosing at the interview, and there is no indication there were any interpretation problems. He also conceded he was placed under oath. And he was given, like you said, the opportunity to cross-examine the asylum officer. And, in fact, he was able to testify again after the asylum officer testified to clarify any discrepancies. To this day, he has never claimed he told the asylum officer he started supporting the party before 1993. And, again, these notes and this asylum officer's testimony is consistent, wholly consistent, with his 2002 asylum application, which he submitted only weeks earlier. Now ---- Sotomayor, what, if anything, should we make of the wife's testimony, or her declaration, rather, which is consistent with Petitioner's current version of what happened? Well, I think ---- I know there was a statement submitted in 2006. I'm not sure if you're referring to that statement. So the statement submitted by his wife and her testimony in 2006 that is consistent, for one, Petitioner didn't raise the issue of his wife's testimony and statement on a particular ---- Well, I want you to assume that he did. Okay. Because he asked for the BIA to consider the entire record and to put his statements in context. And certainly that was part of the entire record. So I want you to assume that we don't have a jurisdictional problem. All right. Absolutely, Your Honor. Well, in the judge's decision, first of all, considered the entire record. Although the judge does not make mention specifically of the evidence, at the top of page 102 in the record in the judge's decision, he stated that he specifically considered all evidence. Separate from that, we feel, and the Board adopted and affirmed the decision under matter of Bourbono, but ---- Is that sufficient? I've considered all the evidence? Yes. When there is a relatively substantial body of corroborative evidence, all the judge has to do is say I've considered it without addressing it in any way? Well, Respondent feels that it is enough because there's a presumption that the agency considered the evidence. This Court has said there's a presumption that the Board or the agency has considered all of the evidence and that it's Petitioner's burden to show that the agency did not consider the evidence. And that's in the Laredo-Martinez decision. What troubles me here is the subtlety. You recall the discussion about membership versus activity and so forth. If you're dealing with a layperson, we're relying largely on this testimony of a hearing officer who has no recollection, notes that are either incomplete or indiscernible. And the test is whether or not that is a substantial reason to justify the judge's discrediting of not only the testimony of the Petitioner, the testimony of his wife, the affidavit submitted, the certification from the doctor who treated his wounds. All that's out the window with a single phrase, I've considered all the evidence. Well, to go beyond what Your Honor is concerned about, the statement of his wife doesn't corroborate the 1998 mistreatment by police. It doesn't corroborate the dates of his activity. If you look at that statement, it does say he was politically involved. It does talk about the 2001 incident where the police arrived and mistreated Mr. Gill's father and slapped his wife. But it doesn't corroborate the torture claim, the mistreatment, his dates of involvement in the party. It does all of these issues where there's inconsistencies. It doesn't help resolve those issues, nor does the letter from the doctor. It doesn't state anything with regard to the specifics of his injuries. It gives the time, which is consistent with the testimony of Mr. Gill. It describes generally the nature of the industries, the injuries and the severity of the injuries. It's entirely consistent with what he said. I think, I mean, the point here is not we want to pull away from the fact that the judge relied solely on these often indiscernible notes taken in 2002. It's the notes in conjunction with the officer's testimony, in conjunction with the 2002 asylum application, which again states nothing of any political involvement. And to counsel's point about it not mattering, his mistreatment occurred in 1998, so why does all of this matter? It matters greatly because he says later that he fled India in 1993, went to Ghana because he feared that he would be persecuted just like his wife's cousin Navtej, who was allegedly killed in 1992. He said his wife told him to cut his hair and to leave the country because they were afraid he'd be persecuted. All of that is left out of his first asylum application. It simply says he took a job in Ghana. And also his asylum application talks about his birth, his family background, his education, his marriage, his kids' birth dates. But it mentions nothing of political involvement, which later bolsters his claim that he was very involved from the early 80s, that he transported people to rallies, that he handed out flyers, et cetera. And it provides a non-economic reason for why he went to Africa and a reason for him fleeing the country to begin with. So we would feel that it's very pertinent. It helps us determine how involved he was and why authorities, local authorities, would even be interested in him when he went back to India for a short visit. So, again, it's not just the asylum officer's notes and testimony. It's in conjunction with this earlier application. And also that application, whether or not it was prepared with the assistance of an attorney, it stated that he was to provide all dates of involvement in the instructions, and he did not. I see that my time is up. Thank you, counsel. Thank you. Mr. Job, you may have a minute for rebuttal. Two points. First, on this issue of embellishment, the government says this is obviously embellishment. I can't understand that argument because in 400 pages of testimony, he never once attempted to link his activities from before 1993 to the abuse that he suffered. If he was embellishing somehow purposely, wouldn't you think he would try to link those activities to the persecution he suffered? Yes, everybody never did. Second point, these notes. I mean, if the transcript was somehow destroyed of a deportation hearing, would this court agree to rely on an immigration judge's notes as to what transpired in the hearing? No way. This case all turns on what happened at this interview, and yet there's no verbatim transcript. There's not a clear record of what took place. The asylum officer herself concedes these are not verbatim notes. There's no punctuation in half of these things. This issue, she herself concedes that the guy said during the interview that he was not much involved in India before he left. Thank you, counsel. Your time has expired. We appreciate very much the arguments of both counsel in this interesting case, and the case is submitted.
judges: Dearie, Graber, Nguyen